IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

AURORA M. MUNIZ-SAVAGE, )
MARIA A. SAVAGE, )
)
v. ) CIV-15-654-R
)
MICHAEL ADDISON, )
JANET DOWLING, )
JASON BRYANT, )
DEPARTMENT OF CORRECTIONS )

**ORDER**

This matter comes before the Court on the Motion to Dismiss, filed by Defendants. (Doc. No. 2). Plaintiffs responded in opposition to the motion and attached exhibits to their response, which the Court declines to consider in response to the motion to dismiss. *See* Fed.R.Civ.P. 12(d). Having considered the parties' submissions, the Court finds as follows.

Plaintiffs filed this action alleging violations of their constitutional rights with regard to their desire to visit Kent Savage, former spouse of Plaintiff Aurora Muniz-Savage and father of Plaintiff Maria Savage, during his incarceration. Plaintiffs contend they were originally permitted visitation with Mr. Savage at the Joseph Harp Correctional Center following Mr. Savage's incarceration in February 2012. They allege that in November 2013, their regular visit was declined without explanation and they were informed their visitation privileges had been revoked.

On December 12, 2012, Defendant Addison, warden at Joseph Harp, sent a letter to Plaintiff Muniz-Savage stating that visitation had been terminated because she had ignored a court order not to bring certain children to visit Mr. Savage. Mr. Addison, however, was

mistaken, and there was no such order. On July 14, 2014, after visitation had not been restored, Plaintiff Muniz-Savage wrote to the warden seeking an explanation for the termination of visitation.

On August 7, 2014, Warden Addison responded to Plaintiff Muniz-Savage's letter. He stated visitation had been terminated because he believed Ms. Muniz-Savage was placing children in danger.[1] On August 26, 2014, Mr. Savage was transferred to the James Crabtree Corrections Center. Ms. Muniz-Savage wrote to then-warden Janet Dowling, who responded by stating she would continue to enforce Warden Addison's decision to deny her visitation.

In October 2014, when Maria Savage turned eighteen, she submitted a visitation form, hoping to be approved as a visitor for her father.[2] On December 4, 2014, Mr. Savage's case manager informed him that Maria Savage had been denied visitation, permanently. Defendant Bryant replaced Janet Dowling as warden of James Crabtree in February 2015. Plaintiffs have requested that Defendant Bryant reconsider their request for visitation, with no response.

Plaintiffs' contend the denial of visitation violates their rights under the Fourteenth Amendment of the United States Constitution and their rights under the Oklahoma Constitution. They also argue that the denial violates their rights of familial association under the First Amendment. Plaintiffs also allege violation of their rights to free exercise of

---

[1] Maria Savage was a victim of her father's sex crimes.

[2] Prior to suspension of their visiting privileges, while she was a minor, Maria Savage had apparently visited her father with her mother.

religion. In support of their allegations Plaintiffs assert that their sincerely held religious beliefs require that Maria Savage receiving blessings from Mr. Savage. Plaintiff seeks an order permitting visitation unless the Department of Corrections establishes a violation of OP-030118D, the Department of Corrections's Visitation Policy. They also seek monetary damages.

The Court analyzes Defendants' motion under the Rule 12(b)(6) standards, which require it to "assume the truth of Plaintiffs' well-pleaded factual allegations and view them in the light most favorable to the plaintiff." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). In ruling on a Rule 12(b)(6) motion, the dispositive inquiry is whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In addition, although the Plaintiffs herein are not prisoners, they can be subjected to the same limitations as if they were in Mr. Savage's position. *See e.g. Thacker v. Campbell*, 1998 WL 537599, *2 (6th Cir. 1998)("Prison official may impinge on a prisoner and his visitor's First Amendment rights if their actions are reasonably related to legitimate penological interests.").

Defendants first seeks dismissal of the claims against the State and the individual Defendants in their official capacities because the State is not a "person" for purposes of 42 U.S.C. § 1983 litigation. Defendants also note that suit against the individual Defendants in their official capacities is tantamount to suit against the State, and therefore claims against the individuals in such capacity are subject to dismissal. The Department of Corrections also asserts Eleventh Amendment immunity.

As argued by Defendant Department of Corrections, it is entitled to dismissal of Plaintiffs' claims because it is not a "person" subject to suit under 42 U.S.C. § 1983. *Will v. Michigan Department of State Police*, 491 U.S. 58 (1989). Similarly, the warden Defendants in their official capacities are entitled to dismissal, because they are not persons for purposes of § 1983 either with regard to damages or retroactive injunctive relief. *McLaughlin v. Board of Trustees of State Colleges of Colorado*, 215 F.3d 1168, 1172 (10th Cir. 2000).

With regard to Warden Addison, in his official capacity, the Court finds that Plaintiffs' claims for injunctive relief are moot, because Mr. Savage was transferred from Joseph Harp Correctional Center to James Crabtree. Therefore, the Court cannot fashion injunctive relief with regard to Joseph Harp Correctional Center. Defendant Janet Dowling in her official capacity is similarly subject to dismissal with regard to Plaintiffs' request for injunctive relief, because she is no longer warden at James Crabtree. Accordingly, the only potential official capacity employee Defendant is Jason Bryant, the warden at Mr. Savage's current facility. *See Green v. Mansour,* 474 U.S. 64, 68 (1986)(Suits for prospective injunctive relief against individual defendants in their official capacities are not barred by the Eleventh Amendment, because of the need to prevent continuing violations of federal law). Accordingly the § 1983 official capacity claims against Defendants, Addison and Dowling are hereby dismissed. The Court must therefore consider whether Plaintiffs have stated a claim against Defendant Bryant, in his official capacity, or against any of the individual Defendants in their individual capacities.

Ground One of the Petition filed by Plaintiffs in the District Court of Oklahoma County alleges claims under the Fourteenth Amendment, asserting that the denial of visitation violated Plaintiffs' rights under the equal protection clause and their due process rights.[3] They contend they are being denied visitation even though they meet all the requirements and that other similarly situated persons have not been so denied.

The law requires that "[t]o make a claim of denial of due process in violation of the Fourteenth Amendment, a plaintiff must show the deprivation of a protected liberty or property interest." *Schmitt v. Rice,* 421 Fed. Appx. 858, 861(10th Cir.2011)(citing *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 569 (1972)). The Court finds Plaintiffs have failed to state a due process claim, because there is no protected liberty interest with regard to visitation so as to support such a claim.

First, per Department of Corrections' policies, none of the policies adopted by the Department is intended to confer a right upon inmates or visitors. *See* OP-010101 ("The procedures contained in the department operations manual or field manuals are not created to directly benefit any offender, nor do they confer any right upon any offender or member of the public. The internal departmental procedures are written to instruct departmental staff on how to exercise the discretion vested in the Board of Corrections and the director and to give authority to staff to exercise that discretion in the performance of their assigned and

---

[3] The Court is concerned with the rights of the named Plaintiffs herein, which are derivative of Mr. Savage's rights, and cannot exceed in scope his rights. The Court, however, is not considering whether Mr. Savage's rights were violated by any Defendant in his or her individual capacity or whether he is directly entitled to injunctive relief.

implied duties."). OP-030118 provides specifically that "[v]isitation is a privilege, not a right."OP-030118 § I(A).

Additionally, courts have repeatedly concluded that "there is no affirmative constitutional right to visitation." *White v. Keller*, 438 F.Supp. 110, 114 (D.Md. 1977)(citing *Underwood v. Loving*, 391 F.Supp. 1214, 1215 (W.D.Va. 1975). "Since *Sandin*, we have consistently stated in unpublished opinions that inmates lack a liberty interest in visitation." *Rackley v. Blevins*, 596 Fed.Appx. 620, *624 (10th Cir. 2014). Neither convicted prisoners nor their family members have an inherent constitutional right to visitation. *Flanagan v. Shively*, 783 F.Supp. 922, 934 (M.D.Pa.), *aff'd*, 980 F.2d (3d Cir.1992).

> Neither prisoners nor visitors have a constitutional right to prison visitation. *Harris v. Murray,* 761 F.Supp. 409, 412 (E.D.Va.1990). "The denial of prison access to a particular visitor 'is well within the terms of confinement ordinarily contemplated by a prison sentence.' ... Nor is access to a particular visitor independently protected by the Due Process Clause." *Navin v. Iowa Dep't of Corrections,* 843 F.Supp. 500, 504 (N.D.Iowa 1994) (quoting *Hewitt v. Helms,* 459 U.S. 460, 468, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983)), and (citing *Kentucky Dep't of Corrections v. Thompson,* 490 U.S. 454, 461, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989)).

*Hill v. Washington State Dep't of Corr.*, 628 F. Supp. 2d 1250, 1262 (W.D. Wash. 2009). In the absence of a liberty interest, Plaintiffs were not entitled to any procedural safeguards before visitation privileges were removed. *See Fristoe v. Thompson*, 144 F.3d 627, 630 (10th Cir.1998) (recognizing that a due process claim cannot be maintained absent a protected liberty interest). As such, Plaintiffs have failed to state a claim for a constitutional violation of their due process rights under the Fourteenth Amendment and dismissal is appropriate on this basis.

Plaintiffs also seek relief under the Equal Protection Clause. The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const., amend. XIV, § 1. "[T]he Fifth Amendment imposes on the Federal Government the same standard required of state legislation by the Equal Protection Clause of the Fourteenth Amendment." *Schweiker v. Wilson,* 450 U.S. 221, 226 n. 6 (1981). Plaintiffs' claim does not involve the denial of a fundamental right because, as previously discussed, inmates do not have a constitutional right to unrestricted visitation. *See Abad v. Furlong*, No. 96–1095, 1996 WL 693057 (10th Cir1996) (unpublished op) ("Plaintiff's loss of ... visitation rights, sanctions imposed apart from the disciplinary proceedings, fail[s] to provide a basis for a federal constitutional claim." (citations omitted)). And because ex-wives and children of inmates do not constitute a suspect class, Plaintiff has not alleged differential treatment based on a suspect classification. In order to state a viable equal protection claim Plaintiffs must allege that the distinction between their treatment and that of other persons was not reasonably related to some legitimate penological purpose. *See Trujillo v. Williams,* 465 F.3d 1210, 1228 (10th Cir.2006) (citation omitted). This, the Petition filed in state court fails to do.[4] Rather, the

---

[4] Plaintiffs allege:
Because other visitors who have passed background checks and inmates who have good behavior have visitation privileges, there is impermissible or invidious discrimination; a violation of equal protection.

∗∗∗

Other inmates families and friends who are similarly situated and passed background checks, are allowed to visit. Therefore, the plaintiffs are not receiving equal protection; they are being invidiously discriminated against.

Petition, p. 6.

Petition states that other persons who passed background checks were permitted to visit inmates, without identifying whether those allegedly similarly situated persons were in the same position vis-a-vis the prisoner, that is, the victim of the inmate's sexual offenses. The Court finds that Plaintiffs have failed to state a claim for violation of their equal protection rights.

In Ground II Plaintiffs assert a claim under the First Amendment, arguing that Defendant's actions violated their right of association.[5] Here the allegation is that Plaintiff Maria Savage is precluded from visiting her father because she was a victim of his offenses and Aurora Muniz-Savage because she brought Maria Savage to visit Kent Savage prior to imposition of the ban.

In challenging the decision of prison officials with regard to visitation with an inmate, Plaintiffs face hurdles in addition to *Iqbal's* pleading burden. As a general matter, a decision to limit visitation is "valid if it is reasonably related to legitimate penological interests." *Turner v. Safley,* 482 U.S. 78, 89 (1987). The Court uses four factors to guide its *Turner* inquiry:

> (1) whether a rational connection exists between the prison policy regulation and a legitimate governmental interest advanced as its justification; (2) whether alternative means of exercising the right are available notwithstanding the policy or regulation; (3) what effect accommodating the exercise of the right would have on guards, other prisoners, and prison resources generally; and (4) whether ready, easy-to-implement alternatives exist that would accommodate the prisoner's rights.

---

[5] As the ex-wife of Mr. Savage Plaintiff Aurora Muniz-Savage cannot state a claim based on familial association.

*Beerheide v. Suthers,* 286 F.3d 1179, 1185 (10th Cir.2002) (citing *Turner,* 482 U.S. at 89–91). The first is the most important; it is "not simply a consideration to be weighed but rather an essential requirement." *Boles v. Neet,* 486 F.3d 1177, 1181 (10th Cir.2007) (quotation omitted). Analysis of all four *Turner* factors is not necessary until the summary judgment stage. *Al–Owhali v. Holder*, 687 F.3d 1236 (10th Cir.2012); *Jones v. Salt Lake Cnty.,* 503 F.3d 1147, 1153–59 (10th Cir.2007). Accordingly, at the pleading stage, Plaintiffs must "include sufficient facts to indicate the plausibility that the actions of which [they] complain] were not reasonably related to legitimate penological interests." *Gee v. Pacheco* 627 F.3d 1178, 1188 (10th Cir. 2010).

The Court has no difficulty concluding that Plaintiffs lack facts from which the Court can infer that restricting their visitation is not reasonably related to a legitimate penological interest. Although Plaintiffs contend that Maria Savage desires to visit her father, the warden who originally imposed the ban explained the penological interest in keeping a victim away from the person convicted of harming her.[6] Plaintiffs' "pleadings include no facts indicating that the government lacks a legitimate penological interest in limiting [his visitation with his victim] or that the . . . restrictions are unrelated to this interest." *Al-Owhali*, 687 F.3d at 1241. Accordingly, the Court finds that Plaintiffs have failed to state a claim for the violation of the First Amendment rights and dismissal of the claim against Defendant Bryant in his

---

[6] "I initially directed my staff to remove you and your daughters (offender's victims) from the approved visiting list due to my belief that these minor children were placed in danger, by you, when you brought then to visit the person who assaulted them." August 7, 2014 Letter from Warden Addison to Plaintiff Muniz-Savage, Petition, Ex. 4.

official capacity is appropriate and Plaintiffs' request for injunctive relief as set forth in the Petition is hereby DISMISSED.

Having concluded that Plaintiffs have failed to allege a violation of their constitutional rights, the Court concludes Defendants, in their individual capacities are entitled to dismissal. Furthermore, as asserted in the motion to dismiss, the warden Defendants in their individual capacities assert they are entitled to qualified immunity.

Qualified immunity shields government officials from liability for discretionary functions if their conduct does not violate clearly established rights of which a reasonable government official would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982); *Perez v. Unified Gov't of Wyandotte Cnty./Kansas City, Kan .,* 432 F.3d 1163, 1165 (10th Cir.2005). Defendants may raise the defense in a motion to dismiss. *See Peterson v. Jensen,* 371 F.3d 1199, 1201 (10th Cir.2004). In evaluating qualified immunity in the context of a motion to dismiss, the Court determines whether Plaintiffs have alleged that Defendants deprived them of a constitutional right and whether that right was clearly established at the time. *Id.* at 1202 (citing *Saucier v. Katz,* 533 U.S. 194, 201 (2001)). With regard to the clearly established prong, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640 (1987). "[T]his standard does not require a precise factual analogy to preexisting law; however, the plaintiff must demonstrate that the unlawfulness of the conduct was apparent in light of pre-existing law." *Brammer–Hoelter v. Twin Peaks*

*Charter Acad.,* 602 F.3d 1175, 1184 (10th Cir.2010) (quoting *Jantz v. Muci,* 976 F.2d 623, 627 (10th Cir.1992)).

In response to the motion to dismiss Plaintiffs argue "[t]hese rights were clearly established via published case law at the time of the unlawful activity by the defendants. Every reasonable trained prison official would have understood that what he or she did, violated the law." Plaintiffs' Objection to Motion to Dismiss, p., 19 (citing *Morris v. Noe*, 672 F.3d 1185, 1191 (10th Cir. 2012)(considering qualified immunity and excessive force).

> Mr. Cleveland argues the visitation restriction was unreasonable because(1) he had visited his children without incident several times before the restriction went into effect,(2) the children wanted to visit him,(3) the visitation policy was underinclusive of its stated aims,(4) the visits were closely monitored, and (5) prison officials erroneously treated a letter by Jaclyn Rivera as a binding court order.
> 
> ***
> 
> In assessing the rationality of the visitation restrictions, we place the burden on Mr. Cleveland. *See Wirsching v. Colorado*, 360 F.3d 1191, 1200 (10th Cir.2004).Neither our court nor the Supreme Court has ever invalidated similar limitations on visitation based on the denial of familial association. Though a fact-finder could reasonably infer a substantial hardship on Mr. Cleveland, our precedents prevent us from treating the visitation limitations as a clearly established violation of the First Amendment. Therefore, we conclude the defendants are entitled to qualified immunity on the First Amendment claim.

*Cleveland v. Martin*, 590 F. App'x 726, 731 (10th Cir. 2014). Therefore, the Court finds the individual Defendants are entitled to qualified immunity on Plaintiffs' contention that the removal of their visitation rights violated their First Amendment rights.

Having disposed of Plaintiffs' federal claims, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims. *See* 28 U.S.C. § 1367(c)(3). Plaintiffs' state law claims are hereby remanded to the District Court of Oklahoma County.

Defendants' Motion to Dismiss is GRANTED. Plaintiffs' Motion to Clarify is hereby DENIED AS MOOT. The Court makes no findings with regard to Plaintiffs' Motion to Compel.

IT IS SO ORDERED this 16th day of November, 2015.

_David L. Russell_
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE